IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| **PORFIRO BARNES,** | ) | |
| Plaintiff, | ) | Civil Action No. 7:12cv00067 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| **S.K. YOUNG,** *et al.*, | ) | By: Norman K. Moon |
| Defendants. | ) | United States District Judge |

Plaintiff Porfiro Barnes ("Barnes"), a Virginia inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that defendants Dr. Hopkins and Nurse Yates were deliberately indifferent to his serious medical needs and that Nurse Osborne retaliated against him for filing grievances. Defendants Dr. Hopkins, Nurse Yates, and Nurse Osborne have moved to dismiss this action, arguing that Barnes's complaint is barred by the statute of limitations, that Barnes has failed to exhaust his administrative remedies as to all of his claims, and that Barnes has failed to state a claim of constitutional magnitude. (*See* docket no. 24.) I find that Barnes's complaint was timely filed, and that the defendants have failed to establish that his claims are unexhausted. Furthermore, I find that Barnes has stated a constitutional claim against Nurse Osborne, Dr. Hopkins and Nurse Yates.[1] Thus, for the following reasons, I will grant in part and deny in part the defendants' motion to dismiss.[2]

---

[1] Barnes also alleges that Dr. Hopkins violated his rights under Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act. *See* Compl. 9. These allegations are insufficient to support a viable claim, and thus I will grant defendants' motion to dismiss this portion of Barnes's complaint against Dr. Hopkins.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subject to discrimination by any such entity." 42 U.S.C. § 12132. To establish a violation of the ADA, a plaintiff must show: (1) that he has a disability, (2) that he is otherwise qualified for the benefit in question, and (3) that he was excluded from the benefit due to discrimination solely on the basis of the disability. *See, e.g., Doe v. University of Md. Med. Sys. Corp.*, 50 F.3d 1261, 1265 (4th Cir. 1995).

Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, forbids discrimination against disabled individuals in programs receiving federal funds: "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . . ." 29 U.S.C. § 794(a).

## I.

Barnes states that he was diagnosed with lumbar spinal stenosis.[3] Barnes alleges that when he arrived at Pocahontas State Correctional Center ("Pocahontas") on March 2, 2010, he possessed a walker and cane to assist him in getting around. Barnes claims that both of these mobility aids were previously approved by the Virginia Department of Corrections and prescribed to him by "institutional doctors who specialize in spinal disorders and back diseases." Barnes states that upon entering Pocahontas, he was placed in medical housing because his walker and cane were not allowed in general population. Thereafter, Barnes claims that his walker was "confiscated and deemed as unauthorized." Barnes filed an emergency grievance seeking return of his walker "because [his] legs had weakened to the point where they could barely support [his] weight . . . ." That night, Barnes's walker was returned to him. On March 9, 2010, Barnes was released from medical housing and assigned to general population. Barnes was denied his walker when transferred into general population, but was allowed to have his cane. Barnes states that, shortly after his assignment to general population, he began to

---

[In support of his ADA and Rehabilitation Act claims against Dr. Hopkins, Barnes alleges that Dr. Hopkins denied Barnes the use of a walker for non-medical reasons—specifically, because the Warden does not allow walkers in the Pocahontas State Correctional facility. Barnes contends that "Dr. Hopkins' judgment was so egregiously bad, that it wasn't really medical at all." Compl. 10. He further alleges that Dr. Hopkins "acted reckless with respect to the standard of medical care," and that he "continued to overlook the serious nature of [Barnes's] spinal condition and did not act responsible." *Id.* I find that Barnes's allegations are too vague and conclusory to sufficiently demonstrate a violation of either the ADA or the Rehabilitation Act, and none of his allegations indicate disability-based discrimination. Specifically, while Barnes claims that Dr. Hopkins was deliberately indifferent to his medical needs, he does not sufficiently allege that Dr. Hopkins excluded him from any program "solely by reason of his disability." *See* 29 U.S.C. § 794(a). Accordingly, I will grant defendants' motion to dismiss Barnes's complaint as to these claims against Dr. Hopkins.

[2] The remaining, non-medical defendants, Young, Meek, Eaton, and Schilling have filed a motion for summary judgment (docket no. 31), which will be addressed separately.

[3] "Lumbar spinal stenosis is a narrowing of the spinal canal in the lower back, known as the lumbar area. This narrowing occurs when the growth of bone or tissue or both reduces the size of the openings in the spinal bones. This narrowing can squeeze and irritate the nerves that branch out from the spinal cord. It can also squeeze and irritate the spinal cord itself. This may cause pain, numbness, or weakness, most often in the legs, feet, and buttocks." *Lumbar Spinal Stenosis,* WebMD, http://www.webmd.com/back-pain/tc/lumbar-spinal-stenosis-topic-overview (last visited Feb. 27, 2013).

"experience extreme pain in [his] lower back and legs due to the uneven pressure being placed on [his] spine from walking to and from the pill window and the mess hall."

Barnes alleges that Dr. Hopkins denied him use of his walker based on non-medical reasons—specifically, "that the Warden does not allow walkers" in the facility. Barnes claims that he "filed numerous complaints warning of possible further damage to [his] spine due to the uneven pressure of using a cane as [his] only mobility aid. Yet, Dr. Hopkins continued to overlook the serious nature of [his] spinal condition and did not act responsible."

On May 6, 2010, Barnes was assigned a job as an inmate assistant pushing another inmate in a wheelchair. Barnes states that he used the other inmate's wheelchair as a makeshift walker to help him ambulate throughout the facility.

On June 10, 2010, Dr. Hopkins ordered an MRI of Barnes's lumbar spine. Barnes claims that the results of the scan showed degenerative changes, disk bulging, and mild central canal stenosis.

On September 10, 2010, Barnes filed a grievance against Nurse Osborne for refusing to issue him medication that he could self-administer. Barnes claims that in response to the grievance, Nurse Osborne called Barnes to the medical unit and "issued threats to get even with [him]." Three days later, Barnes filed two more grievances against Nurse Osborne, one for threatening to make him "suffer" by having him removed from his inmate assistant job, and one for cursing, yelling, and telling him that she "didn't care if [he] crawled around the compound but she was having the wheelchair removed." On September 15, 2010, someone reported to Nurse Osborne that Barnes was seen being pushed in the wheelchair by the inmate that he was assigned to push after Barnes had succumbed to the pain in his lower back. On September 17, 2010, Barnes claims that Nurse Osborne had Barnes removed from his inmate assistant job.

Barnes claims that Nurse Osborne's actions were "direct retaliation" to him "exercising his constitutional rights to seek relief from her abuse and harassment."

Barnes claims that on October 29, 2010, Nurse Yates met with the Unit Manager, the Assistant Warden, and Barnes to discuss Barnes's inability to ambulate throughout the facility. Barnes claims that Nurse Yates explained that Barnes was not sick and that she was not going to have him transferred to medical housing. Barnes also alleges that Nurse Yates informed him that he would have to wait six days to see if Dr. Hopkins would approve him for using a wheelchair. Barnes states that he explained that his inability to ambulate meant that he had no way to receive his medication or food, but he was told he would have to wait to see a doctor before he could be given a wheelchair. Barnes claims that he is diabetic and that suffers "emotional disorders" for which he takes medication to maintain his mental health. Barnes alleges that Dr. Hopkins and Nurse Yates were deliberately indifferent to his serious medical needs. Barnes was transferred to a different facility on January 28, 2011.

## II. Timeliness

Defendants Hopkins, Yates, and Osborne argue that Barnes's § 1983 complaint is untimely filed under the applicable statute of limitations. I find that Barnes's complaint is timely filed and, therefore, I will deny defendants' motion to dismiss on this ground.

For purposes of the statute of limitations, § 1983 actions are considered personal injury claims and are governed by the personal injury statute of limitations and tolling laws in the state where the alleged injury occurred. *Lewellen v. Morley*, 875 F.2d 118, 120 (7th Cir. 1989); *see also Hardin v. Straub*, 490 U.S. 536, 539 (1989); *Wilson v. Garcia*, 471 U.S. 261, 279 (1985); *Blanck v. McKeen*, 707 F.2d 817, 819 (4th Cir. 1983). Barnes's claims of constitutional violations took place in Virginia and, therefore, Virginia law concerning the statute of limitations governs this case. Virginia has a two-year statute of limitations for general, personal injury

claims. Va. Code § 8.01-243(A); *Almond v. Kent*, 459 F.2d 200, 203-04 (4th Cir. 1972). Under these principles, a plaintiff bringing a civil rights action under § 1983 in Virginia must do so within two years from the time his action accrues.[4] Barnes was incarcerated at Pocahontas from March 2, 2010 to January 28, 2011, during which time the alleged constitutional violations were ongoing. Barnes filed this complaint on January 26, 2012. Even assuming that the statute of limitations began to run as soon as Barnes was transferred to Pocahontas, his complaint is not untimely filed. Accordingly, I will deny defendants' motion to dismiss Barnes's complaint on this basis.

### III. Exhaustion

Defendants Hopkins, Yates, and Osborne argue that Barnes's claims concerning Nurse Yates's refusal to transfer him to medical housing and Nurse Osborne's retaliation against him are not exhausted because Barnes did not include copies of Level II grievance responses with his complaint. I find that the defendants have not demonstrated that Barnes's claims are unexhausted and, therefore, I will deny their motion to dismiss on this ground.

The Prison Litigation Reform Act requires that inmates exhaust all available administrative remedies before filing an action challenging prison conditions. 42 U.S.C. § 1997e(a). However, failure to exhaust available administrative remedies is an affirmative defense, not a jurisdictional requirement, and thus inmates need not plead exhaustion, nor do they bear the burden of proving it. *See Jones v. Bock*, 549 U.S. 199 (2007); *see also Anderson v. XYZ Correctional Health Servs., Inc.*, 407 F.3d 674, 681 (4th Cir. 2005). As the defendants

---

[4] Under federal law, a cause of action accrues when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action. *See Brooks v. City of Winston Salem*, 85 F.3d 178, 181 (4th Cir. 1996) (citation omitted); *United States v. Kubrick*, 444 U.S. 111, 122-24 (1979). An inmate's action is commenced for purposes of the statute of limitations as soon as he delivers his complaint to prison authorities for mailing. *Houston v. Lack*, 487 U.S. 266, 276 (1988); *Lewis v. Richmond City Police Dep't, et al.*, 947 F.2d 733, 735 (4th Cir. 1991). Thus, in Virginia, if an inmate has not delivered his complaint to prison officials for mailing within the two-year period following the time when he knew or had reason to know of his alleged injury, that inmate is barred by the Virginia statute of limitations from bringing suit.

provide no affidavit or any support for their argument that Barnes has failed to fully exhaust all of this claims, I cannot find that they have demonstrated that Barnes's claims should be dismissed for failure to exhaust administrative remedies. Accordingly, I will deny defendants' motion to dismiss Barnes's claims on this basis.

### IV. Failure to State a Claim

Defendants Hopkins, Yates, and Osborne argue that Barnes's allegations fail to state a constitutional claim. I find that Barnes sufficiently alleges that Nurse Osborne retaliated against him for filing grievances. I also find that Barnes sufficiently alleges that Dr. Hopkins and Nurse Yates were deliberately indifferent to his serious medical needs. Therefore, I will deny defendants' motion to dismiss on this basis.

### A.

First, with regard to Barnes's claim against Nurse Osborne, Barnes claims that after filing a complaint against Osborne on September 10, 2010, for refusing to issue him his medication, she summoned Barnes to the medical unit and "issued threats to get even with [him]." On September 13, 2010, Barnes issued two more complaints against Nurse Osborne: one for allegedly threatening to make him suffer by removing him from his job of pushing another inmate's wheelchair, and the other for "cursing, yelling and telling [Barnes] that she didn't care if [he] crawled around the compound but she was having the wheelchair removed." On September 17, 2010, Barnes states that Osborne removed him from his job. In sum, Barnes claims that Osborne's actions were "in direct retaliation for me exercising my Constitutional rights to seek relief from her abuse and harassment."

It is well settled that state officials may not retaliate against an inmate for exercising his constitutional rights. *See American Civ. Liberties Union v. Wicomico County*, 999 F.2d 780, 785 (4th Cir. 1993). Still, an inmate has no constitutional right to a prison job, *see Winning v. H.C.C.*

*Med. Unit Staff,* No. 2:11cv60, 2012 U.S. Dist. LEXIS 47051, 4-6 (N.D. W. Va. Mar. 7, 2012) (collecting cases), and the Fourth Circuit has noted that "the Constitution creates no entitlement to grievance procedures or access to any such procedures voluntarily established by a state." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1975).

However, with regard to that Fourth Circuit decision, "*Adams* has not been applied to foreclose retaliation claims. Rather, courts in this district . . . have applied *Adams* and held that a prison official's failure to comply with the grievance procedures is not actionable under Section 1983." *Fisher v. Neale, et al.*, 2010 WL 3603495, at *7 (E.D. Va. Sept. 8, 2010) (collecting cases). Like the plaintiff in *Fisher*, here Barnes is not alleging a failure of access to grievance procedures; rather, he is alleging that a prison official retaliated against him for filing grievances, in violation of his First Amendment rights. *See id.* at *8 ("Although the Fourth Circuit has not yet published an opinion on this point, other Circuits agree that prison officials may not retaliate against a prisoner for exercising his First Amendment rights.") (collecting cases).

Accordingly, Barnes's allegation that Nurse Osborne retaliated against him for filing grievances states a viable claim for a constitutional violation. Thus, I will deny defendants' motion to dismiss this claim against Nurse Osborne.

**B.**

Barnes also alleges a constitutional claim under the Eight Amendment against Dr. Hopkins and Nurse Yates. To state a cognizable Eighth Amendment claim for denial of medical care, a plaintiff must allege facts sufficient to demonstrate that jail officials were deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Staples v. Va. Dep't of Corr.*, 904 F. Supp. 487, 492 (E.D. Va. 1995). To establish deliberate indifference, a plaintiff must present facts to demonstrate that the defendant had actual knowledge of and

7

disregard for an objectively serious medical need. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Rish v. Johnson*, 131 F.3d 1092, 1096 (4th Cir. 1997).

In this case, Barnes alleges that he has been diagnosed with lumbar spine problems that cause him great pain when ambulating without the use of mobility aids. Barnes claims that due to the pain he experienced when trying to ambulate across the facility, he was unable to eat meals or retrieve his mental health medication. Barnes alleges that both Dr. Hopkins and Nurse Yates were aware of his condition, the pain he was experiencing, and his inability to obtain food or medication due to that pain. Barnes also alleges that despite their awareness of these issues, neither Dr. Hopkins nor Nurse Yates helped him, and both denied him access to a walker. I find that Barnes's allegations state a claim of constitutional magnitude and, therefore, I will deny defendants' motion to dismiss as to these claims against these defendants.

## V.

For the reasons stated herein, I will grant in part and deny in part defendants' motion to dismiss.

The Clerk is directed to send a copy of this memorandum opinion and the accompanying order to the parties.

ENTER: This 18th day of March, 2013.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE